Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 94 C 897 | **DATE** | 11/1/2000 |
| **CASE TITLE** | In Re: Brand Name Prescription Drugs (This Document relates to: No. 94 C 1200, Rite Aid Corp. and Revco D.S., Inc.) | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** The motion (Docs 4489-1 & 4502-1) of Defendant G.D. Searle & Co. and certain Wholesalers to enforce the final judgment is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | NOV 0 2 2000 | |
| | Notified counsel by telephone. | date docketed | 4586 |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING 00 NOV -1 AM 9:09 | |
| | Copy to judge/magistrate judge. | | |
| SCT | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE BRAND NAME PRESCRIPTION DRUGS ANTITRUST LITIGATION | ) ) ) ) | 94 C 897 |
| This Document Relates To: | ) ) ) | MDL 997 |
| NO. 94 CV 1200, RITE AID CORPORATION and REVCO D.S., INC., | ) ) ) | |

**DOCKETED**
**NOV 0 2 2000**

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter is before the Court on the motion of Defendant G.D. Searle & Co. and certain Wholesaler Defendants to enforce the final judgment in the class case against Individual Plaintiffs Rite Aid Corporation and Revco D.S. Inc. For the reasons set forth below, we deny the motion.

### BACKGROUND

In the early 1990s, tens of thousands of retail pharmacies of various sizes filed suit for, *inter alia*, alleged violations of the Sherman Act, 15 U.S.C. § 1, et seq. against virtually all of the leading manufacturers and wholesalers of brand name prescription drugs. Pursuant to orders of the Judicial Panel for Multidistrict Litigation, the cases were consolidated in this Court for coordinated or consolidated pretrial proceedings.

4586

In late 1994, certain plaintiffs named in the Consolidated and Amended Class Action Complaint ("Amended Complaint") moved to have their action certified as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. We granted the motion, certifying a nationwide class comprised of

> [a]ll persons and entities in the United States who, at any time during the period from October 15, 1989, to the present, purchase or purchased prescription brand name drugs directly from any of the defendants. The class excludes defendants; other manufacturers of prescription brand name drugs; other wholesalers of prescription brand name drugs; co-conspirators of any of the foregoing entities; affiliates, parents, and subsidiaries of any of the foregoing entities; governmental entities; mail order pharmacies; health maintenance organizations; hospitals; clinics; and nursing homes. In re Brand Name Prescription Drugs Antitrust Litigation, 1994 WL 663590 (N.D. Ill. Nov. 18, 1994).

Pursuant to Rule 23(c)(2), counsel for the class notified all reasonably identifiable potential class members of the pendency of the suit and their ability to opt-out of membership in the class. The opt-out provisions of the notice read, in pertinent part:

> If you fit the above description of a class member, you have a choice whether or not to remain a member of the class on whose behalf this suit is being maintained. Either choice will have its consequences, which you should understand before making your decision...If you request exclusion, you will not be entitled to share in the benefits of any settlement or other recovery obtained in these actions and will not be bound by any judgment.

Revco D.S., Inc. ("Revco") and Rite Aid Corporation ("Rite Aid") opted out of the class and pursued this case (No. 94 C 1200), along with numerous other opt-out

plaintiffs (the "Individual Plaintiffs") as co-plaintiffs, alleging that the defendant pharmaceutical product manufacturers and wholesalers had violated the Sherman Act and the Robinson-Patman Act by conspiring to fix and/or stabilize the price of brand-name prescription drugs. The Sherman Act claims asserted by Revco and Rite Aid are fundamentally the same as those brought by the class plaintiffs. In re Brand Name Prescription Drugs Antitrust Litigation, 1995 WL 654134 at *1 (N.D. Ill. Nov. 3, 1995).

The class case proceeded to trial in the fall of 1998. Following the presentation of the class plaintiffs' case-in-chief on liability, this Court granted judgment as a matter of law in favor of all defendants. The Seventh Circuit affirmed the judgment as to class plaintiffs' Sherman Act claims. Manufacturer Defendant G.D. Searle & Co. ("Searle") and certain Wholesaler Defendants[1] (collectively, "Defendants") now seek to enforce this judgment in the class case against opt-out plaintiffs Revco and Rite Aid.

---

[1]AmeriSource Corporation, Bergen Brunswig Corporation, Bindley Western Industries, Inc., Cardinal Health, Inc., McKeeson Corporation and Whitmire Distribution Corporation

## DISCUSSION

Defendants' motion rests on the fact that although Revco and Rite Aid properly opted out of the class in 1995, they have since formed corporate relationships with class members, namely:

1. In the summer of 1996, Rite Aid acquired all of the assets and liabilities of Taylor Drug Stores ("Taylor"), a member of the class. Rite Aid thereby became the owner of Taylor's claim in the class case.

2. On October 27, 1996, Revco purchased Big B, a member of the class. Big B became a wholly-owned subsidiary of Revco.

3. On December 13, 1996, Rite Aid acquired Thrifty PayLess Holdings, Inc., the parent company of class member Thrifty PayLess, Inc. Thrifty PayLess Holdings has ceased to exist, but Thrifty PayLess, Inc. ("Thrifty PayLess") has continued as a fully-functioning, wholly-owned subsidiary of Rite Aid.

4. On May 9, 1997, CVS Corporation ("CVS") acquired Revco. Revco has continued to exist as a wholly-owned subsidiary of CVS.

5. On August 27, 1997, Rite Aid acquired K&B Incorporated, a class member. K&B Incorporated became a fully-functioning, wholly-owned subsidiary of Rite Aid.

The gravamen of Defendants' motion is that by virtue of these mergers and acquisitions, Revco and Rite Aid have become so closely affiliated with class members that the final judgment in the class trial is enforceable against them under the principles of *res judicata*. "[T]he doctrine of res judicata provides that when a final judgment has been entered on the merits of a case, it is a finality as to the claim or demand in controversy, concluding parties and those in privity with them." Nevada v. United States, 463 U.S. 110, 129-130 (1983) (citations omitted). The purpose of the doctrine is to "protec[t] litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979). "There is of course no dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation....Basic principles of res judicata (merger and bar or claim preclusion) and collateral estoppel (issue preclusion) apply." Cooper v. Federal Reserve Bank of Richmond, 467 U.S. 867, 874 (1984), citing Supreme Tribe of Ben-Hur v. Cauble, 255 U.S. 356 (1921); Restatement of Judgments § 86 (1942); Restatement (Second) of Judgments § 41(1)(e) (1982); Fed. R. Civ. Proc. 23(c)(3).

Nevertheless, potential members of a class certified under Federal Rule of Civil Procedure 23(b)(3) are entitled to "opt-out" of the class and thus escape the binding

effect of a final judgment. Fed. R. Civ. P. 23(c)(2) ("the judgment, whether favorable or not, will include all members who do not request exclusion"); Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985) (due process requires that absent plaintiff in state equivalent to 23(b)(3) class action be provided with opportunity to opt out of class); see also Wright & Miller Federal Practice and Procedure § 1789. The "Notice of Pendency of Class Action" approved by this Court and issued to Revco and Rite Aid in 1995 notified them of this opt-out right and indicated that by exercising it, they would "not be entitled to share in the benefits of any settlement or other recovery obtained in these actions and [would] not be bound by any judgment."

Defendants do not dispute that Revco and Rite Aid properly opted out of the class in 1995. Nor do they contend that the opt-out plaintiffs as a group are bound by the judgment in the class trial. Instead, Defendants argue that Revco and Rite Aid necessarily opted back into the class by merging with or acquiring significant class plaintiffs.

We begin our analysis of Defendants' argument with a few factual observations. First, Defendants' motion to enforce the final judgment against Revco and Rite Aid comes more than a year and a half after the verdict in the class case and three to four years after the operative corporate transactions. In the interim, Revco and Rite Aid have continued independently to litigate their individual actions and have eschewed

any effort to submit claims in connection with the class' multimillion-dollar settlement with certain defendants. Nor were Revco's or Rite Aid's damage claims submitted as part of the overall damages claim at the class trial. Defendants' motion is admittedly based in part on the "good faith" assumption that Revco's and Rite Aid's profits would have figured into any calculation of damages to which their corporate affiliates would have been entitled had the class prevailed at trial. As it turns out, this assumption was incorrect.

Defendants' motion was also based in part on the notion that CVS owned Revco's claim and controlled the litigation of its opt-out case, and that Rite Aid owned and controlled its subsidiaries' class claims. The affidavits of Elliot S. Gerson, Senior Executive Vice President and General Counsel of Rite Aid, Zenon P. Lankowsky, Vice President, General Counsel and Secretary of CVS, and Jack A. Staph, former Senior Vice President, Secretary, and General Counsel of Revco, submitted with Plaintiffs' opposition papers, demonstrate that these assumptions, too, were erroneous. First and foremost, Defendants somewhat vaguely assert that Revco was purchased by "CVS," an alleged member of the class. In fact, Revco was purchased by CVS Corporation, whose wholly-owned subsidiary CVS Pharmacy, Inc. ("CVS Pharmacy") is a class member. CVS Corporation itself is not. And although Revco and CVS Pharmacy are now corporate affiliates, they operate as separate entities. The stores of Revco and

CVS Pharmacy are licensed differently and their purchases tracked separately. More importantly, the ownership of Revco's claim has remained with Revco (now renamed CVS Revco D.S., Inc.) following the merger. Accordingly, Revco and CVS Pharmacy have pursued their claims separately, pursuing different strategies and retaining different counsel.

Similarly, Rite Aid has maintained class members Thrifty Pay Less and K&B as independent corporate entities, with separate officers and directors and, significantly, control over their own class claims. Rite Aid does, on the other hand, own the class claim of Taylor Drug Stores. By Defendants' own calculations, Taylor's claim was the 41st largest in the class with an estimated return of only 0.12% of any overall class recovery. According to the Gerson affidavit, Rite Aid's claim had it joined the class would have been several times the value of the Thrifty PayLess, K&B and Taylor claims combined.

Although their corporate ties are perhaps less close than Defendants presumed, Rite Aid and Revco are indeed affiliated in one way or the other with class members. We thus must proceed to consider whether these affiliations alone are sufficient to nullify their decisions to opt out of the class and subject them to a *res judicata* bar of their Sherman Act claims. In considering this issue, we first note that Defendants have cited no case in which a court has bound a plaintiff who properly opted out of a class

to a judgment rendered in the class case. To do so would, under ordinary circumstances, violate that party's due process right to his or her day in court. Cooper v. Federal Reserve Bank of Richmond, 467 U.S. at 874.

The question presented here is whether that conclusion changes when an opt-out plaintiff, after years of litigation, develops a corporate affiliation with a class member. Defendants argue that such affiliations created "privity" between Revco and Rite Aid and the class plaintiffs, and that parties in privity with a party to an earlier judgment are themselves bound by that judgment. The Seventh Circuit has recently stated that "[w]hether there is privity between a party against whom claim preclusion is asserted and a party to prior litigation is a functional inquiry in which the formalities of legal relationships provide clues but not solutions." Tice v. American Airlines, Inc., 162 F.3d 966, 971 (7th Cir. 1998), quoting Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343 (2d Cir 1995). "A proper functional analysis of privity [focuses] on the general question whether the earlier parties were in some sense proper agents for the later parties." Id.

By remaining in a class after adequate notice and the opportunity to opt out, absent parties grant class representatives "a form of consent that is enough to justify binding the later parties to the earlier result." Tice, 162 F.3d at 972. It is undisputed that when CVS Pharmacy, K&B, Taylor, and Thrifty PayLess manifested this consent

back in 1995, they were not authorized to act as agents for Revco and Rite Aid. And the evidence presented by Rite Aid and Revco indicates that the series of corporate transactions by which they became affiliated with these class members did not authorize the class members to act on their behalf. Instead, Revco and Rite Aid took steps to maintain control over their individual lawsuits by retaining separate counsel, at times taking positions antithetical to those of their corporate affiliates. See e.g., In re Brand Name Prescription Drugs Litigation, 1996 WL 351180 (N.D. Ill. June 24, 1996) (addressing Individual Plaintiffs' objections to "most favored nations" clause in class plaintiffs' proposed settlement agreement); Class Plaintiffs' Motion to Compel Individual Plaintiffs to Produce Defendants' Computer Tapes for Copying; see also Tice, 162 F.3d at 973 (focus of preclusion analysis is on "how closely the two sets of interests coincide and the role the absentees played in the earlier litigation"). Under these circumstances, no agency relationship was created by virtue of the mere "formalities of legal relationships" between the parties.

This conclusion squares with the due process principles underlying the constitutional right to opt out of a class action suit. The Seventh Circuit recognized in Tice that an identity of interests between the parties to the first and subsequent actions is not sufficient to bind the later plaintiffs to the outcome of the first suit. Rather, due process requires at a minimum that "there should be some indication not only that the

second party was aware that the first litigation was going on and that the earlier litigation would resolve its claims, but also that the second party either had participated or had a legal duty to participate." 162 F.3d at 973, citing Shutts, 472 U.S. at 811-12 (emphasizing "the need for absentee parties to have the right at least to notice and an opportunity to opt out of litigation"). These safeguards emanate from the "fundamental principle of American law that every person is entitled to his or her day in court." Id. at 966.

Finally, our result is bolstered by the fact that ultimately, "the achievement of substantial justice...is the measure of the fairness of the rules of res judicata." Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 325 (1971). Due to Defendants' delay in raising the issue of Revco's and Rite Aid's corporate affiliations, Revco and Rite Aid have spent significant sums litigating their opt-out claims. They have also refrained from seeking a portion of the class settlement and from submitting their damage claims at the class trial. It would not advance the interests of justice to allow Defendants to "wait-and-see" the outcome of the class trial then, upon discovering it to be favorable to themselves, pursue a preclusion defense that could have been raised years earlier. We therefore conclude that on the facts of this case, opt-out plaintiffs Rite Aid and Revco did not forfeit their opt-out status

merely by entering into the corporate transactions that commingled their interests, to some degree, with those of certain members of the class.

## CONCLUSION

For the foregoing reasons, the motion of Defendant G.D. Searle & Co. and certain Wholesalers to enforce the final judgment is denied.

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated: __November 1, 2000__