# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 94 C 897 | **DATE** | 1/29/2001 |
| **CASE TITLE** | In Re: Brand Name Prescription Drugs (All Actions by Boies/Gravante Plaintiffs) | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** Manufacturer Defendants' motion (Doc 4623-1) to disqualify counsel is granted in part and denied in part. The Barrett Gravente lawyers may continue to represent the Boies Gravante Plaintiffs. Boies Schiller is ordered to institute enhanced screening procedures consistent with the requirements set forth in this opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JAN 3 0 2001 date docketed | 4694 |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | mw docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | 01 JAN 29 PM 3: 27 | |
| SCT | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE BRAND NAME PRESCRIPTION DRUGS ANTITRUST LITIGATION | ) ) ) | 94 C 897 |
| All Actions by Boies/Gravante Plaintiffs | ) ) | MDL 997 |

## MEMORANDUM OPINION

DOCKETED
JAN 3 0 2001

CHARLES P. KOCORAS, District Judge:

This matter is before the Court on the Manufacturer Defendants' motion to disqualify counsel. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

From the outset of the litigation consolidated in this Court as MDL 997 (the "BNPD litigation") until January 1998, Defendant DuPont-Merck was represented by attorney Donald Flexner, a partner at the law firm of Crowell & Moring. As DuPont-Merck's attorney, Flexner allegedly received confidential information from both DuPont-Merck itself and other MDL 997 defendants with whom DuPont-Merck had entered into a Joint Defense Agreement. According to the affidavit of David E. Everson, attorney for defendant Hoechst Marion Roussel, Inc., Flexner was an active participant in the joint defense group and regularly received confidential information, including descriptions of discovery, trial, and other litigation strategies,

from other MDL 997 defendants. Flexner's participation in the litigation ended in January 1998, when the Court approved his client's settlement of the claims against it.

Two years later, on December 1, 1999, Flexner left Crowell & Moring to become a name partner at Boies, Schiller & Flexner LLP ("Boies Schiller"). He practices out of the firm's Washington, D.C. office. While at Boies Schiller, Flexner did not represent DuPont-Merck or any of its opponents in the BNPD litigation. However, on July 1, 2000, Nicholas Gravante, Jr., attorney for 3700 opt-out plaintiffs in this case (the "Boies/Gravante Plaintiffs" or "Plaintiffs"), along with the attorneys from his former firm (the "Barrett Gravante lawyers"), joined Boies Schiller. Although the Boies/Gravante Plaintiffs dismissed their claims against DuPont-Merck prior to October 1995, they continue to have claims pending against some of the defendants who shared confidential information with Flexner pursuant to the Joint Defense Agreement. Those defendants[1] ("Defendants") now move to disqualify Gravante and Boies Schiller from further representation of the Boies/Gravante Plaintiffs.

## LEGAL STANDARD

Disqualification is a "drastic measure that courts should impose only when absolutely necessary." Owen v. Wangerin, 985 F.2d 312, 317 (7th Cir.1993) (quoting

---

[1] The moving defendants are Abbott Laboratories, Ciba-Geigy Corp., SmithKline Beecham Corp., Hoechst Marion Roussel, Inc., Hoffman-LaRoche, Inc., Johnson & Johnson, Merck & Co., Pfizer, Inc., Pharmacia & Upjohn Co., and Schering-Plough Corp.

Schiessle v. Stephens, 717 F.2d 417 (1983)). The burden is on the moving party to show the facts warranting disqualification. Livers v. Wu, 6 F. Supp. 2d 921, 925 (N.D. Ill. 1998); Weeks v. Samsung Heavy Industries Co., 909 F. Supp. 582, 583 (N.D. Ill. 1996). At the same time, any doubts as to the existence of an asserted conflict must be resolved in favor of disqualification. U.S. v. Goot, 894 F.2d 231, 235 (7th Cir. 1990).

## DISCUSSION

Pursuant to Northern District of Illinois Local Rule 83.51.9(a), a lawyer who has formerly represented a client in a matter shall not, without the former client's consent, thereafter represent another party in the same or a substantially related matter in which the party's interests are materially adverse to the interests of the former client. Local Rule 83.51.10 bars a lawyer associated with a firm from representing a client when the lawyer knows that Rule 83.51.9 would prohibit another lawyer associated with that firm from taking on the representation. Defendants argue that these two rules, in combination, require Gravante's disqualification from representation of the Boies/Gravante Plaintiffs.

Before discussing the implications of the imputed disqualification doctrine, we must first address the question of whether Flexner himself would be eligible to represent Plaintiffs despite his prior representation of DuPont-Merck. It is undisputed that Flexner never directly represented Defendants in this litigation. Defendants argue,

however, that they should be considered Flexner's "former clients" under Rule 83.51.9 by virtue of his participation in the joint defense of the consolidated actions.

Circuit precedent makes clear that Flexner would owe Defendants a fiduciary duty not to use against them any confidential information he obtained from them pursuant to the Joint Defense Agreement. GTE North, Inc. v. Apache Products Co., 914 F. Supp. 1575, 1580 (N.D. Ill. 1996) (citing Analytica, Inc. v. NPD Research, Inc., 708 F.2d 1263, 1269 (7th Cir. 1983) and Westinghouse Elec. Corp. v. Kerr-McGee Corp., 580 F.2d 1311 (7th Cir. 1978)). Even Flexner acknowledges that he is "bound to maintain the confidentiality of non-public information relating to the *Brand Name Litigation*...which [he] may have received from the other defendants in such litigation." Plaintiffs argue, however, that Defendants have failed to demonstrate that they actually communicated any confidential information to Flexner.

Because there was admittedly no direct attorney-client relationship between Defendants and Flexner, Defendants are not entitled to a presumption that confidential information was exchanged. GTE North, 914 F. Supp. at 1580. Rather they must present affirmative evidence of an exchange of confidential information. Id. To this end, Defendants have submitted the affidavit of David E. Everson, attorney for Defendant Hoechst Marion Roussel, Inc., who describes Flexner's involvement in the joint defense as follows:

Mr. Flexner was an active participant in the joint defense group and regularly received confidential information pursuant to the Joint Defense Agreement. For example, he received information regarding documents that defendants had themselves selected as being particularly important to their cases. Mr. Flexner also participated with other defense counsel in many telephone conferences and discovery strategy sessions and joined with the other defendants in preparations for expert depositions. He also drafted briefs and court pleadings on behalf of defendants, including briefs regarding Illinois Brick and Noerr-Pennington issues. Mr. Flexner even personally attended conferences during which all defendants presented detailed descriptions of their trial strategies.

Everson's account is both uncontested and sufficiently detailed to satisfy Defendant's burden of showing that Flexner obtained confidential information from them. We therefore find that Flexner would be barred from personally representing Plaintiffs in their BNPD lawsuits against Defendants. N.D. Ill. Local Rule 83.51.9; GTE North at 1580-81.

We next proceed to determine whether Flexner's disqualification necessarily leads to the disqualification of the Barrett Gravante lawyers. Northern District of Illinois Local Rule 83.51.10(b), which sets forth the law of imputed disqualification in this Court, provides:

> When a lawyer becomes associated with a firm, the firm may not represent a person in a matter that the firm knows or reasonably should know is the same or substantially related to a matter in which the newly associated lawyer, or a firm with which that lawyer was associated, had previously represented a client whose interests are materially adverse to that person unless:
> (1) the newly associated lawyer has no [confidential information] that is material to the matter; or
> (2) the newly associated lawyer is screened from any participation in the matter and is apportioned no specific share therefrom.

The "firm," for our purposes, is Boies Schiller, and the "newly associated lawyer" is Flexner. Defendants incorrectly identify Gravante as the newly associated lawyer on the basis that he joined Boies Schiller after Flexner did. The question addressed by Rule 83.51.10, however, is whether a firm can take on a client even though it has hired a lawyer who, as a result of work he performed prior to joining the firm, would be conflicted out of the case. Here, then, the section governs whether Boies Schiller, through the Barrett Gravante lawyers, can represent Plaintiffs even though Flexner, as a result of work he performed prior to joining the firm, would be ineligible to take on such a representation. The answer to that question, in turn, turns on whether Flexner (the newly associated lawyer) is adequately screened from participation in the litigation.

Gravante joined Boies Schiller on July 1, 2000. On August 2, 2000, David Everson wrote to Gravante to express his concern that Gravante's continued representation of Plaintiffs created a conflict of interest. Immediately upon receiving Everson's letter, Gravante "took steps to formalize the intra firm screening mechanism which, as a practical matter, had already been in place" since Gravante arrived at Boies Schiller. In particular, Gravante notified the attorneys and non-legal staff working on the BNPD litigation that they were not to discuss the case with either Flexner or any person from Boies Schiller's Washington office, where Flexner works. Flexner has also agreed not to share in any legal fees Boies Schiller receives from this case.

Defendants argue that these screening procedures are inadequate to ensure that their confidential information will not end up in the hands of the Barrett Gravante lawyers because Flexner is not, and has never been, insulated from communication with those lawyers in the Boies Schiller firm who are not currently working on the BNPD litigation. Those lawyers, in turn, are theoretically free to communicate Defendants' information to the Barrett Gravante lawyers. Defendants assert that if Boies Schiller is to continue representing the Boies Gravante Plaintiffs, the Barrett Gravante lawyers must be "completely isolated from all other [Boies Schiller] lawyers for purposes of these or related cases."

Boies Schiller's screening mechanisms do prohibit direct communication between the "tainted" lawyer (Flexner) and those currently working on the BNPD litigation. The physical separation of Flexner and his co-workers in the Washington D.C. office from the Barrett Gravante lawyers, who have remained in their old Barrett Gravante offices in New York, also helps to minimize the risk that the latter will inadvertently gain access to Defendants' information. Nevertheless, we agree with Defendants that there are fatal holes in Boies Schiller's Chinese Wall. The screening mechanisms do not, as they must, "effectively insulate against any flow of confidential information from the 'infected attorney' to any other member of his present firm." Cromley v. Board of Education of Lockport Township High School District 205, 17 F.3d 1059, 1065 (7th Cir. 1994). They prevent him only from communicating with the

Barrett Gravante lawyers. Because any doubts as to the existence of an asserted conflict must be resolved in favor of disqualification, U.S. v. Goot, 894 F.2d 231, 235 (7th Cir. 1990), we conclude that this is inadequate to fully protect Defendants' confidential information.

If it were not for the prejudice that Gravante's 3700 clients would suffer were we to bar Gravante and his legal team from continuing their work on this mammoth, seven-year-old litigation, the above problems might be grounds for disqualification. As even Defendants acknowledge, however, a less extreme remedy is called for. The simplest measure would be to prohibit Flexner from discussing the case with any other Boies Schiller lawyers. But Boies Schiller has failed to adequately screen Flexner during the more than six months since the conflict of interest was first created, and Defendants are legitimately concerned that other Boies Schiller lawyers may have become privy to confidential information during that time. Indeed, Flexner's affidavit submitted in response to this motion does not rule out the possibility; Flexner states only that he has not communicated Defendants' information to the Barrett Gravante team. Under these circumstances, we agree with Defendants that the only effective screen is one which will prohibit the Barrett Gravante lawyers from sharing information about this case with any other lawyers in their firm. We therefore deny the motion for disqualification on the condition that the Barrett Gravante lawyers adopt procedures designed to ensure that they not communicate with other lawyers in the

firm about this case. With respect to monetary participation, on the other hand, the status quo suffices. Flexner alone shall continue to be barred from sharing in any legal fees Boies Schiller may earn for their work on the BNPD litigation.

## CONCLUSION

For the foregoing reasons, Defendants' motion is granted in part and denied in part. The Barrett Gravante lawyers may continue to represent the Boies Gravante Plaintiffs. Boies Schiller is ordered to institute enhanced screening procedures consistent with the requirements set forth in this opinion.

_____
Charles P. Kocoras
United States District Judge

Dated: __January 29, 2001__